The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Court of Appeals. We have four cases today and we will start by hearing arguments from counsel for the Gray v. Zook case. Good morning, Your Honors. I'm Elizabeth Hamburger. I represent Mr. Gray. My co-counsel on this brief is David Weiss, and he's seated at the table there. And Mr. Lee and Sheldon are also present. They continue to represent Mr. Gray. As you're aware, this case has been before this Court before. The District Court had refused to appoint Martinez counsel, and so when it was remanded, I was one of the attorneys appointed to represent Mr. Gray as, quote-unquote, Martinez counsel. We ultimately filed an amended habeas petition that included three new claims for relief, which had not been raised in the State Court, and the District Court ultimately denied those three claims without a hearing on grounds that none of them met the requirements for opening the Martinez gateway. So there are three topics that I would like to cover in my argument. The first is the District Court's decision, and we feel like this is the biggest problem with the District Court's opinion, the District Court's decision to resolve factual disputes without a hearing in granting the Commonwealth's motion to dismiss. Is it your position that that can never be done? It seems to me, after reading the case law from this Court, that on a motion to dismiss, the District Court should draw all reasonable inferences in favor of the petitioner, and that is not what happened in this case. But I don't know that you answered my question. The question was, is it your position that a District Court can never resolve conflicting evidence in the record without a hearing? To the extent that the Court is not drawing reasonable inferences in favor of the petitioner, I would say no. And I can give you examples of what I mean when I say that the District Court did that in this case. I would have thought that your answer to Judge Diaz would have been, certainly when there are credibility issues going to material questions, the Court can't do it. That is absolutely right, Your Honor. I agree with that statement. But I would also think you would have talked about the Strong case, in which we previously had addressed a similar sort of situation, too, in your answer, and you did not. Well, Your Honor, I've been relying on this Court's decisions in Wolfe v. Johnson and Walker v. True, which I think are very relevant. In Wolfe, similarly, there was a claim of actual innocence, so it was taken outside of 2254D. And so affidavits had been presented in the District Court, and the District Court denied the claim without a hearing on grounds, finding that those affidavits were not credible, without deciding, without having a hearing to determine the credibility of those witnesses. You have affidavits that, in the words of Strong, seem conclusory and cryptic, as opposed to very detailed affidavits on the other side. Wouldn't that be such an instance where a District Court could make a determination without a hearing? I mean, perhaps, Your Honor. Perhaps, but that is wrong. That is the case law, Your Honor. That is true. I would say, in that case, the District Court could do that if it's still drawing the reasonable inferences in favor of the petitioner, where you don't have adequate evidence to support, where a petitioner is presenting evidence that doesn't have adequate evidence to support it when taken in the context of evidence presented by the Commonwealth. You say here you have conflicting affidavits, and what you have, essentially, I guess, are two pieces of evidence, one being the sworn statement of the defendant, one being the other being an affidavit of night. Are those the two pieces of evidence from the defendant's perspective that you say have something that is conflicted by the statement? Well, Your Honor, that's the claim that Mr. Lee and Mr. Sheldon are prepared to argue. Mr. Lee is prepared to argue for you today. I am here arguing about the amended habeas petition and the claim that we raised in that. Now, that is a, I agree, there's some similarities between those claims, between what the District Court did here. That issue seems to grab my attention quite a bit. I remember that, Your Honor. You go ahead and move with it, but I'd like to hear about that issue in particular. Well, Mr. Lee is happy to come up here and answer questions that this Court has about that. You can proceed as you're doing, but I'm just letting you know, I think that issue may garner quite a bit of attention. Well, Your Honor, I think they're related. Because the same thing happened in our case. I mean, this claim has never been in the State Court, and so the State Court of Virginia didn't have an opportunity to have a hearing on this or not because State Habeas Council never raised it. But the District Court did something similar, at which we think is similarly problematic, where we presented quite a bit of new evidence that had never been presented before in the State Court because it was a new claim for relief that had not been presented in the State Court. And rather than giving us a hearing, the District Court drew inferences which were in favor of the moving party, in favor of the Commonwealth who are moving to dismiss. And my understanding is that on a motion to dismiss in this Court on a 2254D case, that reasonable inferences need to be drawn in favor of the petitioner, but that's not what happened. I think I misunderstood. So you're only here on the Martinez claim. That's correct, Your Honor. But counsel hasn't even been designated to argue the reserved issue. In other words, when you reported to the clerk this morning, only you were identified as arguing the whole case. What we did, Your Honor, is we filed a motion recently. Which was denied. Let me clear this up. That's right. We filed a motion recently for asking for more time. Which was denied. What we had asked for in that motion was we had said that we were prepared to argue the Martinez issues, and that Mr. Lee, because we recently, so we had been preparing to argue the Martinez issues, then this Court granted our motion asking for additional briefing of the other issue. So we filed a motion saying, in light of this recent development, the fact that you all had requested additional briefing, that Mr. Lee, we wanted to. Well, that request, I'm sorry to cut you off, but that request was simply in response to your suggestion that additional briefing be. That's true. That's true. And so that was eventually granted, and then we said we would like additional time to argue, Mr. Lee will be available to argue that issue. When that motion for additional time to cover the pending issue was denied, we felt that we wanted to spend our time talking about Martinez. Rather, we assumed that if this Court was interested in hearing about both of those issues, because that issue has already been argued. This issue never has been. We assumed that if the Court was interested in having significant argument on the pending claim, which has already been argued, that we would have been given additional time. Seems like a risky assumption. Yes. Well, Mr. Lee is here, and if you all would like me to sit down and you'd like to question him about that claim, he's ready to argue it. What we'd like you to do is present your case in a manner that you think you would like to do for us. We're not going to tell you how to present your case. Seems like to me what you're arguing is still open. Yes, and we think that this is an important claim that you all need to hear about. So I was going to proceed to talk about the Martinez issue. So why hasn't that claim been asserted already? I'm sorry. Why isn't it exhausted? You're here claiming that the Martinez claim was not exhausted. Right, that it was never raised in the state habeas proceedings. Yes. So it's really a very different claim. And I'm sure you all are, your Honors, are familiar with the jurisprudence in this Court,  and when quote-unquote new evidence renders a claim fundamentally altered. But before we even get to that, I think a related but separate question is whether or not this is, the fact that this is simply a different legal theory. It's a different form of deficiency that we are alleging, and it's very clear that this was not presented in the state court. So the claim we have raised is ineffectiveness for failure to consult a pharmacologist or a neuropsychologist and failure to talk to the doctor at the Richmond County Jail who was aware of and failed to make use of the records of psychosis in the Richmond County Jail. None of that was ever asserted in the state court, that trial counsel were ineffective for failing to do those things was never mentioned in the state court. And so it's just, it's simply a different claim of ineffectiveness, and it's related. Well, I think it's more appropriate to say that it may be a better claim, but to Justice Davis's point, it seems to me that at least in sentencing, the issue with respect to your client's alleged intoxication was raised. And isn't that what the distinction we need to make here with respect to default and exhaustion? I would say it was mentioned. It was not raised in this way. It was raised, at most, contained in Claim 9 of the habeas petition is one sentence, which arguably is related to this claim. They argued that trial counsel were ineffective for failing to present expert testimony,  and that was supported by one affidavit, the affidavit of Dr. Mark Cunningham, which was a 38-page affidavit. One page of that was devoted to substance abuse. And Dr. Cunningham is a social scientist. Essentially what he says, which is the pretty unremarkable proposition, that there's a statistical correlation between those who engage in substance abuse and those who commit crime. I would say that's pretty speculative to suggest that a criminal defendant committed a crime based on a statistical correlation between substance abuse and crime. I think we can all agree that that would be considered to be extremely weak mitigation, to the point that there's no reasonable probability that trial counsel could be ineffective for failing to present statistical correlations between crime and drug use. It's just a completely different thing than what we have presented here, which is actual evidence about what the substance that Mr. Gray was consuming does to a person's brain and how that affects a person's behavior. And in addition to that, evidence, which this jury never heard, and which trial counsel and state habeas counsel apparently never considered, evidence that Mr. Gray was, in fact, psychotic at the time of his arrest, which is completely consistent with PCP use. The pharmacology expert that we hired in Martina's proceedings explained that PCP intoxication induces psychotic symptoms which mimic those of schizophrenia. That includes delusions, hallucinations, disorganized thinking, grossly disorganized or catatonic behavior. That's just a general statement as to the possibilities. He never really tied that into your client's situation, did he? Well, the problem is that because PCP induces such difficulty with memory, and one of its symptoms is amnesia and memory loss, it is difficult for Mr. Gray to recall what exactly he was thinking at the time. But that is why it's really important to have these Richmond Jail records, because as Dr. Wilson, who is our pharmacologist, as he explained, the effects of PCP can last for a very long time. And this is why it's important to have an expert pharmacologist in PCP. Your whole case, though, on this is built around what looks to me some rather generalized statement that he was taking these drugs. Tell me the specific evidence here that the district court should have looked at to determine he was actually taking drugs. Well, he stated from a very early stage that he was using PCP at the time of the crime. He admitted that at the time that he was arrested. And you realize how general that is? He stated he was using PCP around the time of the crime. Well, he was using PCP that day. I'm sorry, I misspoke. How much? More specifically. Well, he has reported, and I do acknowledge that this comes from his own report, but I can find here the statement so I can be more specific. What he reports is a huge amount of drugs. And what I want to hear is specific evidence that he took it and how much he took, other than I was using it around this time and I took some. Let's see. Well, my memory is that it is in the tens, like 30 PCP cigarettes that he smoked around the time. And I want to make clear that he does say, he told Dr. Cunningham, the trial counsel was aware of this, that he was using large amounts. And maybe I can find the exact numbers and read them to you when I come back here on rebuttal. That using 30 marijuana cigarettes dipped in PCP, something of that order. And he says he used these over the course of a week. But what a pharmacologist could have explained is that PCP is not a drug like cocaine or something, where you use cocaine and then for a few hours you are intoxicated and possibly to the extent that it would cause you to commit a crime. That's true, but if you don't know how much you've taken and what's there, if you're talking about an ineffective assistance of counsel, you've got to satisfy both of the strickland prongs there to do so. I think you're making a case for, yeah, he took these things and, yeah, he said he did all this. But you have to have more specific evidence in order to get there. And I see your time is exhausted, Lisa, if you want time for rebuttal. So if you want to come back with it, do that. But I'm perplexed that you've not addressed that other issue in this case. But that's your choice. But go ahead. If you want to reserve some time, there will be time for rebuttal. Can I still reserve time if I answer that question? You can choose to use your time as you wish. He's keeping the time of it. Well, I would like to go back and I'll find the affidavit. There is evidence from him about how much he used. There's also corroborative evidence from his co-defendant saying that he was, in fact, using drugs right before they went into the Harvey house. The point I was trying to make is that PCP has very long-lasting effects. So if he was using it a few days before and then used it again and then used it again, it has a building effect. He could have been intoxicated on PCP for a long period of time. That same intoxication from the time of the crime could have still been in existence at the time he was in the Richmond jail. And I think those Richmond jail records are really important, and the fact that no one ever looked at them, the trial counsel never talked with Dr. Curtis to ascertain that PCP mimics the effects of schizophrenia. He was diagnosed with schizophrenia in the Richmond County jail because he was experiencing hallucinations that the doctor thought were schizophrenia. Mr. Gray does not have schizophrenia. The symptoms resolved themselves within a couple weeks, and he was taken off the antipsychotic medications, taken out of the mental health ward. That is corroboration that what he said was true. And since the jury never heard that, they never knew that this was a crime crying out for an explanation. They never understood that this was, right here, a potential explanation for how this was committed. But I will save the rest of my time. Thank you. Matthew Dolgan, Senior Assistant Attorney General, on behalf of the warden this morning. Let me start, if I may, and spend a moment on what's been referred to as the martini. Can you raise that microphone just a bit, please? Thank you. Thank you. Thank you, Your Honor. What's referred to as the Martinez claim, the Claim 11 that was brought in the amended petition after remand. The district court did a careful job that I couldn't possibly recreate in the time here of comparing the portion of the exhausted and dismissed Claim 9, dealing with lack of an expert to explain drug use, with the sentencing portion of the amended Claim 11, dealing with the lack of an expert to explain drug use. And one critical factor in the dismissal of the exhausted Claim 9 in the state court and in the district court was that there was expert testimony explaining drug use. Dr. Lisak gave a deposition. The trial counsel, we're quite happy with, even got in some arguably inadmissible evidence through his deposition explaining the same evidence that a pharmacologist allegedly could have given, the nature of PCP, the nature of the addiction, the nature of the effects it can have on an individual. The Claim 11 doesn't raise any higher than that. First, the focus of both claims is exactly the same. A claim that trial counsel should have put on more expert evidence to explain the effects of drug use. And the gap is exactly the same. There's still no evidence of what drug use was by Mr. Gray on the date of murdering the Harvey family. But a counsel for the other side said he testified that it took so much and it has such lingering effects over a period of time. Of course, I'm paraphrasing, but you heard what was said, so I need you to respond to that. I asked for specific evidence, and I'm assuming she's going to come back and give that to us, because I know the district court itself basically said there was no specific evidence of this. And I think probably what we're going to hear is the articulation of the specific evidence. So speak to that. I'm not aware of any specific evidence either, and significantly the two new experts that were appointed after remand cited no specific evidence about his drug use. What about the evidence of the Richmond jail records that indicated that he was suffering from schizophrenia and, in fact, had no prior history of that ailment? Doesn't that suggest that his testimony at least roughly supports a substantial quantity of drugs that were ingested on that day? What it suggests on his face is that there was a misdiagnosis of schizophrenia. What the jail psychiatrist also says in his statement after the remand was that he was not aware of any recent or past drug use by Gray. And so he did not think it was an explanation for the initial diagnosis of schizophrenia. Why are we supposed to accept an adverse inference of a misdiagnosis? Aren't we supposed to accept that evidence in the light most favorable to Mr. Gray? Mr. Gray is arguing for a misdiagnosis. Mr. Gray is arguing that he was not schizophrenic, this was a side effect of his drug use. Right. What I'm suggesting is that- Why shouldn't we accept that? At least for purposes of determining whether or not we need to further consider the claim. Because it's not the only possible explanation. The other possible, it could be a mere misdiagnosis, that this is a jail psychiatrist, he's hundreds of people, it's not a clinical setting. And the jail psychiatrist, in trying to find an explanation for why it didn't persist as a true schizophrenia would, noted, as the JA associated with this appeal at 244-245, that he had no information about recent or past drug use. So it didn't seem to be fit as an explanation within the information he had available. And that's the information that Mr. Gray says should have been brought forward. It doesn't support his inference. It also is, at best, an inference that he had a PCP habit. It still doesn't help with his argument that he was under the influence of PCP at the time of the Harvey murders. Doesn't give anything that specific. And despite having investigators to not only give expert opinion on the drug use, but they were appointed investigators as well to try and interview and research and find any information there might be to show specific evidence of drug use, none was deduced in the district court. I think that's strong evidence that there is no evidence, such evidence, to be had. They were given an opportunity of time, resources to find that evidence. They did not come forward with it. There simply isn't evidence of what Mr. Gray's drug use was at the pertinent time, at the time he was murdering the Harvey family. But the part of both Claim 9 and Claim 11, as the district court found, is the same. It's this argument that there was not expert evidence about drug use. Dr. Lesak gave extensive evidence about that. There was not evidence tied to Mr. Gray's particular circumstance, but that was a strategic decision by his trial counsel, which was discussed at length and found to be a reasonable trial strategy in dismissing Claim 9. That all the experts who had made a specific evaluation of Mr. Gray also found evidence that would be not mitigated and that would be inculpatory and that would come out at trial if they testified about their specific interview and evaluation of Mr. Gray. His trial counsel decided reasonably that it was a far better course to put on a hypothetical expert such as Dr. Lesak to talk about what drug use in general could result in and argue mitigation from that than to have a specific expert who evaluated Mr. Gray also be forced to acknowledge the aggravating circumstances about his attitude and remarks on violence that came out in each of those evaluations. Hearing about the PCP and maybe from the other side and the effects that it can have, I mean, it's probably well documented it can change the brain. But I'm wondering does this, I mean, you don't know what the lingering effects, whether it's one or two days, and of course this instance, which I guess your position is, that even if you find it in the jail records, that doesn't mean he ingested it during the time of the murders here. But I'm just perplexed at least from the perspective of PCP and how one would be entitled to an intoxication defense when it's found at some point in your system. And does that mean that if you have PCP as opposed to other drugs, you would be entitled to that defense in virtually every case? Two points. The evidence the new experts brought about the general effects of PCP was adduced at trial through Dr. Lesak. The second point, the voluntary intoxication defense claim, my understanding was not part of the certificate of appealability before this court. The district court denied the intoxication defense based on any admissible evidence or any evidence of his intoxication at the time and the fact that he gave a detailed narrative of the events, which under the examples in the event case, another Virginia president, disproves the lack of premeditation. He described his premeditation, his plan to seek a house to rob, why they entered that house, how they dealt with the developing situation they found inside, what they did when new visitors came, why they bound the family, why they took the steps to cut throats, to bash in heads with a hammer, and to take the wine, to set fire and so forth. It completely disproves any claim that there was a lack of premeditation. So the substantive defense of voluntary intoxication, the district court denied, and I didn't understand it was from the scope of the certificate of appealability. The only issue was whether the second half of that claim, that they should have put on that evidence in sentencing, was either a substantial claim or at the threshold, whether it was even defaulted. It's our position that for the reasons the district court went into in great detail, it's not defaulted, but it's also not substantial for the same reasons that the substantive defense would not prove. There's no evidence of such drug use that would have interfered with premeditation. There's evidence that he in fact was lucid, rational, premeditating and planning and evolving his plan as circumstances changed. So it's, I say, not defaulted. It's not substantial because, one, the same theoretical evidence came out at trial, and two, there's no additional information, despite being a point investigator, about what this specific drug use was beyond what they had at trial. I would like to take a moment to address the issues remaining from Claim 3 in the original appeal from the district court's first decision. I don't want to cut short if there are additional questions on what we're both referring to as the Martinez claim. You're doing something the defendant didn't do, so go ahead. Thank you, Your Honor. Your Honor, please, the principal submission we've made consistently throughout is that a determination of fact is decided as reasonable, unreasonable based on what the decision is, not the process used to reach it. Since Penholster and Richter, the Supreme Court's been clear that its reasonableness of the decision that's at issue and the State doesn't even need to articulate its reasoning, just whether the ultimate decision it made was reasonable. The Ninth Circuit has, starting with Taylor and going on through Hurls, gone differently. That's why we have Richter. That's why we have these series of cases correcting the Ninth Circuit's refusal to abide by the AEDPA limits. But other than... Does that amount to, your claim isn't that any process passes buster? That's not your submission, is it? My claim is that process is not the first level inquiry. My claim is that what we have to look at in the first place is whether the decision is reasonable. If it is, as it says in Penholster, the inquiry is at an end. And so how do you judge the reasonableness of a decision rooted in credibility determinations when there is absolutely no basis on which to make a credibility determination? Well, the cases that have... Is that a fair statement of the question? Maybe I should ask first. In other words, A says X, B says Y. Whether it's X or Y is material to the reasonableness of the determination. And a decisionmaker chooses A or chooses... How do you determine the reasonableness of that? And to take your second point, Your Honor, I'm not sure that is the right question after Richter and then the cases that say we don't look to the state court's reasoning. The test and the test that was followed in I think all, certainly virtually all the cases Mr. Gray cited, is to look at the result of the evidence. And the cases where they found an unreasonable finding of fact fall into two groups. There either have been a finding that's contrary to undisputed facts in the record. That's an example of that is the Brumfield case where the Supreme Court found that... The state court found there was no qualifying IQ score despite the fact that there was a 75, which under state law was a qualifying IQ score, and that the state court found there was no evidence of deficits in any domains of adaptive functioning, whereas he had put on evidence in at least two domains. It was simply a flatly wrong statement of the record. It was unreasonable. But here the Supreme Court didn't even mention the night affidavit, did it? It didn't mention the night affidavit in its discussion of Claim 3. It mentioned the night affidavit in its ruling that it was not going to grant our motion to strike it as hearsay and would consider it. And so it didn't mention it in its discussion of Claim 3? No. So, I mean, what do we do with that? My argument, Your Honor, is we don't do anything with it unless their decision that counsel conducted a reasonable investigation is unreasonable. And it's only unreasonable if it's not minimally consistent with the record. Is there actually a Supreme Court case that uses that phrase, minimally consistent? There's precedent in this court we've cited in the brief. The Supreme Court? The Supreme Court does not use the phrase minimally consistent. The Supreme Court says that if there's any conceivable basis for rationality, then the inquiry is at an end. That's a pinholster. And how do you apply that when the conflict is between the credible accounts of a historical event, when all you've got are conflicting affidavits? I think what minimally consistent or conceivable basis mean in that context is that the Supreme Court has to consider all the evidence, but there's no requirement that it give any particular weight to one sort of evidence or the other, particularly in this case where it's weighing the firsthand statements of trial counsel against Mr. Knight's. The uncross-examined firsthand statements of trial counsel, who is alleged to have committed a major act of professional negligence. I mean, the claim here is that as a result of your failure to perform up to the reasonable professional standards, we've got a guy on death row. I'm not impugning defense counsel at all. I'm sure you understand that. But even in our jurisprudence where a federal defendant says, I told my lawyer to file a notice of appeal, and the lawyer says, he never told me any such thing. We have said over and over again, you can't decide that on the basis of conflicting affidavits. You know, the district court has either got to credit the defendant and go ahead and permit a late appeal, or he's got to conduct a hearing. And so I'm hard-pressed to understand if the law says a conflict of that sort between a lawyer and her former client is not amenable to resolution on the papers, how can it be that the kind of conflict in this case can be resolved even under the highly deferential standard of 2254? How can you resolve that just on the papers? Well, it is under the highly deferential standard of 2254. It's a reasonable inquiry. Even if we believe they were wrong, erroneous is not sufficient for 2254 relief. We have to find that they're unreasonable. You mean if they were wrong, you mean if, hypothetically, the lawyer lies? If the lawyer's affidavit is false, and a reviewing state court accepts that false testimony, is that what you mean by wrong? Because that's what wrong would be here. The precedent is if there's an error in the findings, that's not enough unless the error is unreasonable. And how do we know if it's reasonable or not? The reasonableness... It's kind of circular. I appreciate that. Well, it is circular if we keep coming back to whether the process was reasonable. It's our contention that's not the issue. It's whether the decision is reasonable. And the only cases that have been cited where it's unreasonable are where, as in Brumfield, there were facts in the record that simply were ignored. What's the other type you told us about Brumfield? And the other type is where there's no facts in the record, as in the Gordon case that's been cited in the case, where there's simply no basis to find one way or the other whether counsel had, in fact, consulted about the... So, in other words, in this case... In this case, we have evidence from which... Presented by the warden. Yes. So the warden comes in and says, we don't need a hearing here. There's no need for evidence. But, by the way, here's some evidence. We've got an affidavit from counsel. How does that work? I'm sorry? Not quite what we said. We said we didn't need live testimony. We submitted evidence. They submitted evidence in the form of affidavits. Both sides submitted evidence that the court considered and weighed. So the reason you didn't need live testimony is because you have to accept the lawyer's word no matter what, even uncross-examined. No. The reason you didn't need live testimony is we argued that there was sufficient evidence. What Mr. Gray submitted... It's sufficient if the lawyer's affidavit is believed. Yes. And we argued in state court that there was reason to believe it. But you didn't argue that before a judge. You actually heard the lawyer testify under cross-examination. No. We argued on the record, as is common in habeas cases. And in that case, all Mr. Gray had come forward with was Mr. Knight's repetition of hearsay unsworn from Mr. Gray and Mr. Gray's statement to his petition that it was reasonable because of his information and belief. Mr. Knight said he... Counsel, the fact that it may be common doesn't necessarily answer Judge Davis's question as to whether it comports with due process to forego a hearing. Is it your position that in no case, no matter how compelling the defendant's evidence, in no case is the Virginia Supreme Court required to hold a hearing to gauge the credibility of witnesses? Is that your position? I'm not sure I can give a contour to no matter how compelling, but I think it is, in the first instance, the decision for the Virginia Supreme Court, but that's its own precedent that it can decide whether it needs a hearing based on the affidavits before it. And when it has needed a hearing to determine those issues, it can and has ordered a hearing. But that decision, whether the evidence is sufficiently compelling to warrant a hearing, is a question for state procedure. The question in 2054 is whether the decision they reach after whatever process is appropriate under state law is reasonable, is minimally consistent with the record, and it's our position this is. Let me just, the Gordon case, I want to at least get your position clear on that. The Gordon case at least found an issue here really is whether there was an adjudication on the merits. There's an initial issue of whether that has been waived or can be waived. You haven't really spoken to that, but I'll move from that. But in Gordon, it seems the court held that the record had not been properly developed, and it went on one line of affidavits, and therefore there was not an adjudication on the merits, and therefore the federal district court owed no deference to the state court ruling. So the question here really turns on whether there's an adjudication on the merits, and secondly, was there sufficient evidence, or at least the affidavits established from the line of questioning from Judge Davis and Judge Diaz, sufficiently to the point that discovery should have been allowed so that we could import the reasonableness that should have been done by the state court below. That really seems to me the nub of where we are. And I thought at least in your response you articulated something along the strong lines that, well, even if they are affidavits, all Mr. Knight gave were hearsay statements, and then you got the statement of defendants. So when you compare that with the other evidence, you could do it in this instance, and therefore there was an adjudication on the merits. Yes, I do believe that the affidavits in this case, I was trying to get back to some of what Judge Diaz was asking as to whether in any conceivable case, in this case certainly it's not so conceivably strong that I would think it calls for hearing because the affidavits are not entitled to equal weight. But to address your point in Gordon, that there was discussion about the, and I see my time has expired. Can I have a second? Go ahead. There was discussion, Gordon, about whether there was adjudication on the merits or not, mostly to whether the claim had been exhausted and fairly presented or not. We did address in our brief whether Winston applies in this case to whether there's adjudication on merit. I don't think we've waived that point. I didn't argue it this morning, but we do believe there's adjudication on the merits. But what Gordon came down to, ultimately, after discussing the dueling affidavits, was in any event at a minimum Gordon's affidavit clearly implicated SAID's duty to consult. The State Court didn't address that at all, and in the independent review of the record the Federal Courts made, there was no evidence from which to conclude whether or not the duty consult had been satisfied. So it's our position that Gordon is one of those, the way I broke them out, second sort of case where the State Court made a finding implicitly in this case on an element of the claim with no evidence to support it as opposed to where it made a finding contrary to undisputed evidence. All right. Thank you very much. We'll hear a rebuttal from the defendants. Governor, thank you. And if you'll allow me to respond, first of all, I have to apologize that when we asked for supplemental briefing and argument, the Court granted supplemental briefing and didn't expressly grant supplemental argument. That dictated our court today, so I apologize for that. First of all, in answer to your question, Judge Diaz. Let me understand what you're saying. You think that when we granted supplemental briefing we said you couldn't argue it? Yes, Your Honor. Really? I mean, if I read that to you. It was only an extension of the time to argue, not what you argued. Well, I apologize, Your Honor. I think you asked for an extension of the time, but the argument you can do is once we say you can brief it, surely you can argue that that you briefed. Well, thank you, Your Honor. I'll do that. Judge Diaz, the answer to your question is it's not our position that a court can never dismiss a case based on the record presented before it. And we briefed all the cases cited, including strong Judge Wynn, in our reply brief at pages 7 through 14. We go through each of those cases in some detail. The examples are even the case that the warden cited from the Supreme Court of Virginia, the Shake case, where the court said we can rule on the records here because there's no dispute of fact. So when there's no dispute of fact, of course the court can address the record presented. But I think it is the warden's position, as I read his briefs, to say that the Supreme Court of Virginia can always make credibility determinations and base its decision on the facts with really no restriction on the standard it applies. And in our supplemental briefing, we stressed the Brumfield v. Cain case, and I think that's a critical case for this court to look at because the Supreme Court made clear that when you look at the decision that the state court makes, you have to look at it within the context of that decision. At what point in the proceedings that decision is being made. In Brumfield, it was a question whether the state court should grant an evidentiary hearing so that Brumfield could develop and present evidence to support his claim that he was a person with intellectual disabilities. So all of the analysis of the records in the case was just on that decision whether to grant a hearing. In Gray's case, the decision before the Supreme Court is just whether to grant a motion to dismiss Gray's claims as a matter of law without a hearing, without discovery, without any opportunity even to rebut evidence presented against it. And that's the basis of the decision, the way you have to analyze the facts in deciding that decision. And the standard there. May I ask you just very quickly, did the trial judge here ever make an explicit finding of voluntariness? On the confession? I don't believe so, Your Honor, but I don't. You don't recall? I can't tell you for sure, no. Okay. Is that not a part of Virginia practice? That any time there's a confession, the trial judge always makes an explicit finding before admitting a confession? I don't recall that issue being resolved by the trial judge, Your Honor. It was raised, so unless it's a part of the practice, there would have been no particular reason. But part of our claim is the trial counsel's ineffectiveness in investigating the claim. I understand that. But the trial judges in Virginia don't sua sponte? I'll have to get you the answer to that. No, that's all right. Talking about this night affidavit, I mean, it does look like to me it's just hearsay. I mean, he's not telling you anything he knows. He's only repeating what the defendant has said to him in his investigation. Is there any direct evidence here? I mean, you've got an affidavit, and, yeah, it's nice to call it sworn, but he's only swearing as to what he's heard. Well, Your Honor, I think it's technically not hearsay because he's not claiming that it's for the truth of the matter. The point of the night affidavit is that Gray reported this to trial counsel, and then the question becomes was trial counsel reasonable in their investigation with this knowledge? Part of it is that he's only saying Gray told him this, and that's being sworn to, which is what Gray has said, so all you've done is to bolster his statement that I told him. And, I mean, end of the day, that's what you have is nothing direct, but it's all coming from the defendant. That's right, Your Honor, and just to be clear, we're not saying that the night affidavit proves the claim, but as Brumfield says, we don't have to prove the claim. We only have to survive a motion to dismiss, and I wanted to make this point. When the warden in the Supreme Court of the United States, when the warden tells the Supreme Court of the United States what happens in state habeas, this is what they say. The dismissal of pleadings in Bell's, and this is an Eddie Bell's case, assumed all of Bell's factual allegations to be true. And in that same case, they submitted an amicus brief from the Virginia Commonwealth Attorney's Association, and here's how they described the process in Virginia. Virginia's statutory post-conviction proceedings provided an inmate the opportunity for a full and fair adjudication of his claims, accepting his facts as pleaded and finding them insufficient relief in that case, but accepting them as true, and this is in our appendix at page 898 and 888. So the standard that this court, the district court, and this court is looking at when assessing the reasonableness of the state court decision is if Gray's claims presume, his allegations presume to be true, are they sufficient simply to survive a motion to dismiss the claims? Is it a fair characterization of the record to say that his counsel, his former counsel, called him a liar? Oh. Insofar as the Knight affidavit and Gray's affidavit in the post-conviction proceedings? Well, you know, it – Does it amount to that? Partially, and they also kind of ignore it. They don't address, expressly address, you know, what happened with this information that was provided to the defense, but there are other instances and other conflicts relating to other claims where there is just a classic factual dispute, and that's dismissed as the claims are dismissed as a matter of law without any kind of – not only without a resolution of that, but without discovery, without subpoena power, without ability to have witnesses testify under oath, without the ability to rebut the evidence that the warder proffers,  You just told us that it's not a blanket rule that a trial court is – the Supreme Court is within its discretion to simply resolve the claim on the papers without having a hearing. In particular, in our strong case, we said that that's particularly so, and appropriate, when one side's affidavits are cryptic and conclusory and the other side's affidavits are detailed and essentially more probative. Why isn't that this case? Well, because I don't think that the evidence that Gray presented is – Well, he never presented any evidence of specific quantities of drug use on the date in question, did he? Well, the evidence that was presented, that was developed in the record, is things like this is during a binge period that Gray and Dandridge are on. Gray reported smoking something like 30 PCP-laced cigarettes, 80 blunts or dippers, like marijuana cigarettes dipped in embalming fluid. He took 20 pills of ecstasy that someone had given him over that time period. He drank alcohol to the point of intoxication every day. That's just one example, but it's important, I think, to appreciate, Judge Diaz, that prior to filing the petition in Virginia, the petitioner gets nothing. The Supreme Court of Virginia doesn't even have jurisdiction to grant an expert, discovery, any kind of factual development. And so the idea that the claim is not proven at the simple pleading complaint stage is not surprising. And under Brumfield, it's not the right question to ask. The question is whether these claims have legal sufficiency, not the strength of proof of the claims. I think I mentioned at least some of the evidence that Ms. Hallmer wanted to mention about the details of the facts, and we can provide more of those at the court. Thank you very much. Thank you both for the argument. I particularly want to thank counsel for the defendant. I understand you're court-appointed to this case. Is that correct? That's correct. Well, the court really thanks you for your services. As court-appointed lawyers, we could not do these kind of cases without services from lawyers like you who accept cases of this type. So thank you very much, and thank you again for the state also for your presentation. We'll come down and greet counsel and proceed to the next case.
judges: James A. Wynn, Jr., Albert Diaz, Andre M. Davis